**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. __:CV18-_____

MARIA TERESA BERNAL,

Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY,

Defendant.

---

PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL

---

Plaintiff, Maria Teresa Bernal, by and through her attorney, Ralph Lamar, for this her Complaint, respectfully alleges as follows:

**I.    NATURE OF THE CASE**

1.    This employment discrimination action is brought against Defendant Denver Health and Hospital Authority ("Denver Health"), by Plaintiff Maria Teresa Bernal for equitable relief and monetary damages to redress the deprivation of civil rights secured to her by the Americans with Disabilities Act ("ADA"), as amended, and Section 504 of the Rehabilitation Act ("Rehab Act") while she was an employee of Defendant.

Specifically, she alleges that Denver Health retaliated against her in violation of the anti-retaliation provisions of ADA and the Rehab Act when it withdrew a promotion she had received, and then later when it fired her shortly after her reporting to HR about discrimination against an applicant with a disability.  Ms. Bernal alleges that the Defendant's actions caused her mental distress and humiliation, and loss of employment and compensation.  She seeks back pay, reinstatement or front pay, compensatory damages, and attorneys' fees and costs of this action.

1

**II.     JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over the ADA claims under 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States and said claims are brought to recover damages for the deprivation of Ms. Bernal's civil rights.

3.      Venue is proper in this judicial District under 28 U.S.C. § 1391(b),(c) and 42 U.S.C. § 2000e-5(f)(3), because Defendant has offices, conducts business, and can be found in this District, and the causes of action arose and the acts and omissions complained of occurred therein.

**III.    PARTIES**

4.      Plaintiff Maria Teresa Bernal is a citizen of the U.S. currently residing in El Paso, Texas and submits herself to the jurisdiction of this court.

5.      Defendant was the employer who withdrew the job offer and then later terminated plaintiff's employment. At all relevant times during plaintiff's employment by Defendant it employed 15 or more employees, and therefore is subject to the provisions of the ADA and is subject to the jurisdiction of this Court under that statute.

6.      At all relevant times Defendant has received federal funds and/or the department in which plaintiff worked was a program or activity for which federal funds were received, and therefore Defendant is capable of being sued under Section 504 of the Rehabilitation Act and is subject to the terms of that statute.

7.      Defendant's office is located at 601 Broadway Street, in Denver, CO. Defendant is therefore subject to the personal jurisdiction of this court.

## IV.     STATEMENT OF FACTS

8. Bernal was hired as a call center scheduling agent by Defendant on September 16, 2012.

9. She worked there in that capacity until October 19, 2013.

10. On October 20, 2013 she began working as an interpreter for Defendant.

11. Plaintiff worked in that role until December 2, 2014, when she resigned her employment.

12. At that time Ms. Bernal was hired by Externet Works to perform the services of an interpreter for Denver Health.

13. She worked in that capacity until April of 2016 when she learned that Denver Health was hiring for the same position.

14. Ms. Bernal was rehired by Defendant in a supervisory role in the Medical Interpretation Department on May 1, 2016.

15. She worked in that role and in January of 2017 began performing managerial duties of a Project Manager in her department, albeit without the title change or a raise in pay.

16. She continued performing those duties until July 5, 2017 when she resigned and moved out of state to Texas.

17. In July, shortly after leaving her position with Denver Health Ms. Bernal was hired by RightSourcing, Inc., a third party contractor, to perform services for Denver Health.

18. In that position plaintiff was a Remote Medical Interpretation Supervisor and reported to Michael Keelan.

19. She and Keelan worked well together.

20. Plaintiff had been asked by Keelan to review an employee's phone calls because the employee had sent an email implying that she was caring for her child while working.

21. Telephone calls are recorded by the organization and employees are aware of this.

22. If the employee was caring for her child this would violate the telecommuting contract and potentially place patients' health at risk.

23. While reviewing the employee's calls plaintiff Bernal discovered the discrimination against a disabled candidate for an open position in her department.

24. Specifically, plaintiff learned that another employee in the department had contacted the person whose calls were being monitored.

25. That person told the employee that a recruiter from the human resources department at Denver Health had informed her in response to what she had told the recruiter about an interaction with an applicant, that it was illegal to ask an applicant if he was able to walk and that it was also illegal to take a person's disability into consideration when hiring someone.

26. This conversation related to someone who had just recently submitted an application and who possessed an impairment in his gait.

27. The applicant had received an interview.

28. However, the individuals involved in the hiring process had expressed concerns about hiring him based upon his problems walking that they took to HR.

29. The employee whose calls were being monitored then went on to say in the recorded call that "we just wouldn't tell them if we did", referring to the applicant.

30. The applicant did not receive an offer of employment.

31. Upon hearing this exchange plaintiff advised Keelan of an apparent act of disability discrimination by the two employees toward the applicant.

32. Bernal was later told by Keelan that he had passed along the facts to his boss, Mario Harding, the Associate Chief Operating Officer, Ancillary Support, and Shelia Paukert, the Associate Chief of Human Resources.

33. On or about February 21, 2018, while in a meeting, plaintiff personally reported an act of discrimination toward an applicant with a disability to Paukert.

34. At this meeting Paukert advised Bernal and Keelan that told them that she (Paukert) was going to assign Jaime Fleagle to investigate the complaint of discrimination, but said it would have to wait since one of the employees accused of the discrimination was out on FMLA leave.

35. Paukert said Keelan (to whom both employees reported) could not do anything by way of discipline at that time since the employee was on FMLA leave, and if he were to issue discipline it could look like retaliation in violation of the employee's FMLA rights.

36. Paukert also added that when two people are involved in a situation they must be disciplined at the same time.

37. Keelan advised that he would e-mail Fleagle about the situation.

38. Keelan's first e-mail was sent to HR on February 22, 2018.

39. Fleagle did not respond, so Keelan reached out two additional times without receiving a response.

40. Fleagle finally responded on March 27, 2018 with some questions.

41. Keelan responded to Fleagle but neither she, nor anyone else from HR, ever responded back to him.

42. Plaintiff reached out to Tim Harlin (Chief Acceleration Officer) on April 12, 2018, to notify him about her concerns with what was happening in the Medical Interpretations Department and the lack of responsiveness by HR regarding the investigation.

43. She discussed how an applicant for an interpreter position with a visible disability was discriminated against by two employees and that Mr. Harding was aware of the situation and had taken no action.

44. Harlin emailed plaintiff back on April 12, 2018, and asked her to continue to work with Mr. Harding.

45. Mr Harlin basically said he did not want to get involved.

46. Plaintiff said she would do so but never heard back from Harlin about her complaint.

47. On or about March 10, 2018, plaintiff applied for a position as a Manager to work directly for Denver Health.

48. That position would have been a promotion and come with a significant increase in pay.

49. Bernal was given an interview by Keelan and Ivelisse Tiburcio (Supervisor) and offered the position on March 16, 2018.

50. On or sometime after March 23, 2018, Paukert and Harding, decided to rescind or withdraw the offer that had been made to plaintiff.

51. However it was not until April 10, 2018, that plaintiff received a call from Diane Grierson, a Recruiter for HR, who informed Bernal that the job offer had been rescinded.

52. No explanation was offered to plaintiff for the rescinding of the job offer.

53. Bernal received a quarterly performance review in March of 2018. At that time her supervisor's comments included the following: "Overall, Teresa has done a tremendous job in her first year of management and I look forward to more success working alongside her. I believe with more experience she will continue to improve upon the growth areas mentioned above, and that will enable her to become an even bigger asset to Denver Health."

54. On May 15, 2018, plaintiff's employment was terminated by Harding.

55. Plaintiff had not previously been issued any discipline and her prior performance reviews were satisfactory/good.

56. Plaintiff was told the reason for her termination was job performance and employee complaints.

57. This was contradicted by her performance review and the fact that on March 18, 2018, Harding emailed Keelan stating he had no issues with Bernal.

58. Plaintiff was not previously aware of any employee complaints.

59. Plaintiff was never asked to respond to any complaints by her subordinates.

60. Plaintiff was contacted by Dana Turner from Human Resources on May 14, 2018.

61. Turner asked some vague questions, but did not let plaintiff know what this was in regards to.

62. Plaintiff was not given any time to respond.

63. Some of these vague complaints actually did not have anything to do with plaintiff but were part of Tiburcio's doings.

64. Upon information and belief, Defendant maintains and utilizes a progressive discipline policy.

65. Defendant failed to follow its progressive discipline policy in firing plaintiff.

## COUNT I

### ADA VIOLATION - RETALIATION

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Through her complaints of disability discrimination plaintiff engaged in protected activity.

67. Plaintiff's promotion was withdrawn because of her protected activity in violation of the anti-retaliation provisions of the ADA.

68. Plaintiff has been injured by the actions of Defendant which injuries include lost pay and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a) Awarding lost wages, including lost fringe benefits;

(b) Awarding compensatory damages;

(c) Order her reinstatement, or in the alternative, award front pay;

(d) Awarding the costs of this action, together with reasonable attorney's fees; and

(e) granting such other relief as the Court deems necessary and appropriate.

## COUNT II

### ADA VIOLATION - RETALIATION

69. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70. Through her complaints of disability discrimination plaintiff engaged in protected activity.

71. Plaintiff's employment was terminated because of her protected activity in violation of the anti-retaliation provisions of the ADA.

72. Plaintiff has been injured by the actions of Defendant which injuries include lost pay and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a) Awarding lost wages, including lost fringe benefits;

(b) Awarding compensatory damages;

(c) Order her reinstatement, or in the alternative, award front pay;

(d) Awarding the costs of this action, together with reasonable attorney's fees; and

(e) granting such other relief as the Court deems necessary and appropriate.

## COUNT III

## REHAB ACT VIOLATION - RETALIATION

73. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

74. Through her complaints of disability discrimination plaintiff engaged in protected activity.

75. Plaintiff's promotion was withdrawn because of her protected activity in violation of the anti-retaliation provisions of the Rehab Act.

76. Plaintiff has been injured by the actions of Defendant which injuries include lost pay and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

  (a)  Awarding lost wages, including lost fringe benefits;

  (b)  Awarding compensatory damages;

  (c)  Order her reinstatement, or in the alternative, award front pay;

  (d)  Awarding the costs of this action, together with reasonable attorney's fees; and

  (e)  granting such other relief as the Court deems necessary and appropriate.

## COUNT IV

### REHAB ACT VIOLATION - RETALIATION

77. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78. Through her complaints of disability discrimination plaintiff engaged in protected activity.

79. Plaintiff's employment was terminated because of her protected activity in violation of the anti-retaliation provisions of the Rehab Act.

80. Plaintiff has been injured by the actions of Defendant which injuries include lost pay and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

  (a)  Awarding lost wages, including lost fringe benefits;

  (b)  Awarding compensatory damages;

  (c)  Order her reinstatement, or in the alternative, award front pay;

  (d)  Awarding the costs of this action, together with reasonable attorney's fees; and

  (e)  granting such other relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated this ___th day of October, 2018.

                                                Respectfully submitted,

By:   *s/Ralph E. Lamar, Esq.*
        Ralph E. Lamar
        Attorney I.D. No. 44123
        8515 Braun Loop
        Arvada, CO 80005
        (303) 345-3600
        ralphlamar@ymail.com

        Attorney for Plaintiff